UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

v.

Civ. No. 01-1536 (JNE/JGL)
ORDER

Jeffrey A. Munger, Victoria L. Munger,
Minnesota Department of Revenue,
and Bruce K. Hoyt,

Defendants.

---

Michael R. Pahl, Esq., United States Department of Justice, appeared for Plaintiff United States of America.

Neal J. Shapiro, Esq., Bernick and Lifson, P.A., appeared for Defendants Jeffrey A. Munger and Victoria A. Munger.

---

The United States of America (the Government) brought this action to reduce to judgment unpaid federal income tax assessments against Jeffrey A. Munger (Mr. Munger), to foreclose federal tax liens upon real property (the Property) jointly owned by Mr. Munger and his wife, Victoria L. Munger (Mrs. Munger), and to obtain a decree of sale of the Property with proceeds to be applied to Mr. Munger's tax liabilities. The matter is before the Court on the Government's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

Mr. Munger is a self-employed coin dealer who earns approximately $70,000 per year. He files individual (married filing separate) tax returns, and he financially supports his wife. Mrs. Munger asserts that she has a variety of mental illnesses that prevent her from, among other



FILED OCT 2 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED OCT 2 0 2003
DEPUTY CLERK'S INITIALS

things, working and throwing things away.[1] The Mungers each own a one-half undivided interest as joint tenants of the Property. The Property's address is 6000 and 6002 West 106th Street, Bloomington, Minnesota and is described as: Lot Three (3), Block One (1), Stagecoach Hill Addition, Hennepin County, Minnesota. In January 2002, the Mungers had the Property appraised, and its market value was estimated at $225,000. For the taxable year 2002, records from the Hennepin County assessor's office value the Property at $317,000.

The Property is a residential duplex. The Mungers previously lived in one half of the duplex. The City of Bloomington twice condemned this half for excessive accumulation of waste and other materials. After both condemnations, the City of Bloomington cleaned this half of the duplex, including removing contaminated carpeting and furniture. After the most recent condemnation in October 2002, the Mungers moved out and have since lived in a rented apartment. They assert that they plan to return to this half of the duplex after it has been recarpeted and refurnished. Mrs. Munger's 77-year-old mother and the Mungers' 32-year-old son currently live, without paying rent, in the other half of the duplex. Mrs. Munger's mother receives social security benefits, and the Mungers' son works for and receives income from his father as an independent contractor.

The Government filed this action pursuant to §§ 6321, 6322, 7401, 7402, and 7403 of the Internal Revenue Code (the Code), seeking to reduce to judgment Mr. Munger's unpaid federal income tax assessments for the taxable years 1992 through 1998, to foreclose federal tax liens

---

[1] The Mungers rely on Mr. Munger's unsupported assertions in his affidavit and deposition to support their claims about Mrs. Munger's mental condition. However, there is nothing in the record before the Court to substantiate these assertions. Mrs. Munger repeatedly failed to appear at her deposition, and there has been no expert testimony offered about her mental condition. For these reasons, on May 3, 2003, the Court issued an Order precluding the use of testimony by Mrs. Munger.

upon the Property, and to obtain a decree of sale of the Property with proceeds to be applied to Mr. Munger's tax liabilities. The Government named the Minnesota Department of Revenue (the Department) and Bruce K. Hoyt (Mr. Hoyt) as defendants because each may have had a claim of interest in the Property. On October 18, 2003, the Department consented to the entry of default judgment against it, and the Court entered default judgment against the Department. On October 21, 2003, the Government filed the Amended Complaint, which contained the exact same claims as the original Complaint and added Mr. Hoyt as a defendant. Because the claims against the Department in the Amended Complaint are the same as in the original Complaint to which the Department consented to the entry of a default judgment, the default judgment stands. In December 2002, Mr. Hoyt, the prior owner of the Property, entered into a stipulation and disclaimed any ownership in the Property. For these reasons, all claims against the Department and Mr. Hoyt are dismissed with prejudice.

By an Order dated February 11, 2003, the Court reduced to judgment Mr. Munger's unpaid federal income tax assessments for the taxable years 1992 through 1998 and entered judgment against Mr. Munger for his federal tax liabilities in the amount of $233,585.71, plus additional interest accruing after August 20, 2001. The Government now moves for summary judgment on the remaining issues in the case, seeking to foreclose the federal tax liens against Mr. Munger, obtain a decree of sale of the Property, and distribute Mr. Munger's share of the proceeds from the sale to the Government.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Given the February 11, 2003 Order, the parties do not dispute that the Government has valid liens against the Property pursuant to section 6321 of the Code. Under that section, the Government obtains a lien against "all property and rights to property, whether real or personal" of any person who neglects or refuses to pay their taxes. 26 U.S.C. § 6321. Such a lien arises "at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." *Id.*

Section 7403 of the Code allows the Government to enforce its section 6321 liens and foreclose on property owned by the taxpayer. *See* 26 U.S.C. § 7403(c). Specifically, section 7403 provides that "[t]he court, ... in all cases where a claim or interest of the United States ... is established, *may* decree a sale of such property, by the proper officer of the court . . . " *Id.* (emphasis added). A district court may decree such a sale even if an innocent third party also has an interest in the property, so long as the third party receives compensation. *See United*

*States v. Rodgers*, 461 U.S. 677, 693-94 (1983); *United States v. Bierbrauer*, 936 F.2d 373, 374 (8th Cir. 1991).

The permissive language of the statute indicates that a district court has some discretion to refuse to permit sale of a property. However, the Supreme Court has said that such discretion is very limited and should be exercised "rigorously and sparingly." *Rodgers*, 461 U.S. at 711. In deciding whether to exercise its discretion and refuse to order a sale, a district court must make "an individualized equitable balance" of the possibility that an innocent third-party owner "will be unduly harmed" against the Government's "interest in prompt and certain collection of delinquent taxes." *Id.* at 712. In doing so, a district court must consider four factors: (1) the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the taxpayer's partial interest; (2) whether the third party with a nonliable separate interest in the property has a legally recognized expectation that his or her separate property will not be subject to a forced sale by the taxpayer's creditors; (3) the likely prejudice to the third party, both in personal dislocation costs and practical undercompensation; and (4) the relative character and value of the interests held in the property. *Id.* at 709-11. The four factors, however, are not to be a used as a "'mechanical checklist' to the exclusion of common sense and consideration of special circumstances." *Id.* at 711.

In this case, it is undisputed that Mr. Munger owns an undivided one-half interest in the Property and that the Government has valid tax liens against the Property. Thus, the only issue before the Court is whether the Court should exercise its discretion under section 7403 and refuse to order the sale of the Property.

Applying the four factors, the Government contends that the federal tax liens on the Property should be foreclosed by means of a forced judicial sale. It points out that a partial sale

of the Property is practically impossible and would net far less than fair market value for the Property. It argues that Mrs. Munger could not have had an expectation that the Property would not be subject to a forced sale, given Mr. Munger's past debt history and Minnesota's homestead exceptions. *See e.g.* Minn. Stat. § 510.05 (2002). Moreover, the Government notes that Mrs. Munger presently resides in a different location and that she will be adequately compensated for her interest in the Property. Finally, the Government states that the fourth *Rodgers* factor is inapposite, given that Mr. Munger and Mrs. Munger each own one-half of the Property.

In response, the Mungers assert that a genuine issue of material fact exists as to whether the Court should exercise its discretion under section 7403 and refuse to order a judicial sale of the Property. They focus on the fact that Mrs. Munger is mentally ill, has no income, and will be without a place to reside if the sale is ordered. In addition, the Mungers point out that Mrs. Munger's 77-year-old mother also will be displaced if the Property is sold.

Viewing the evidence in the light most favorable to the Mungers, the Court concludes that they have failed to come forward with sufficient evidence to show that genuine issues of material fact exist with respect to the Government's claim for foreclosure. Given the recent condemnation actions and their impact on the future value of the Property, finding a buyer who would pay fair market value for only Mr. Munger's one-half interest in the Property would be difficult. The value of the Property will be significantly higher if sold outright than if only Mr. Munger's one-half undivided interest is sold. The Mungers do not dispute this fact. Thus, the first factor weighs in the Government's favor. *See Bierbrauer*, 936 F.2d at 375. Given Mrs. Munger's complete financial dependence on her husband and Minnesota law's non-absolute protection for one's homestead rights, Mrs. Munger could not have had a "legally recognized

expectation" that the Property would never be the subject of a forced sale. Therefore, the second factor also weighs in the Government's favor.

The third *Rodgers* factor focuses on the adverse effect the foreclosure is likely to have upon Mrs. Munger. A foreclosure sale will often have a detrimental effect on third parties having an interest in the property. That is particularly true when, as here, the Property is (or has been) the third party's residence. However, if those factors were sufficient to warrant denial of permission to foreclose, the foreclosure remedy provided by section 7403 effectively would be negated. Clearly, something more is required before a district court should exercise its discretion not to order a sale.

The Mungers rely on three cases to illustrate why the Court should exercise its discretion and refuse to order a sale of the Property. *See United States v. Johnson*, 943 F. Supp. 1331 (D. Kan. 1996); *United States v. Jones*, 877 F. Supp. 907 (D.N.J. 1995); *United States v. Jensen*, 785 F. Supp. 922 (D. Utah 1992). The Court finds the Mungers' reliance on these cases misplaced. In *Johnson*, the third party had lived in the home for 38 years, was on a limited fixed income, and would be undercompensated for her one-half interest. *Johnson*, 943 F. Supp. at 1335. In *Jones*, the third party, who was a stay-at-home mother who had not worked in several years, needed to remain in the home to continue to care for her minor son. *Jones*, 877 F. Supp. at 918. In *Jensen*, because the third party was suffering from cancer and had a very limited life expectancy, the court concluded that the prejudice suffered by the third party in being unable to replace the "roof over her head" greatly outweighed the prejudice the government would suffer by delaying foreclosure for the balance of the third-party's lifetime. *Jensen*, 785 F. Supp. at 925.

This case does not present such extenuating circumstances. Mr. Munger, by his own admissions, earns $70,000 per year and has been and is able to support Mrs. Munger. The

Mungers are presently living in a rented apartment. Hence, they have already replaced the roof over Mrs. Munger's head. Although it appears that Mrs. Munger does have some health issues, there is nothing in the record to suggest that they are as serious as those described in *Jensen*. Moreover, while it is true that Mrs. Munger's mother and the Mungers' son also will be displaced by a sale of the Property, they currently live rent-free in the Property and do not have an interest in the Property. There is nothing in the record to suggest that they will not be able to find or afford alternative housing. Thus, these two individuals are different from the minor son in *Jones*. Finally, there is nothing to suggest that Mrs. Munger will not be adequately compensated for her interest in the Property, especially given its recent appraisal value. For these reasons, the third factor also weighs in the Government's favor.

With respect to the fourth factor, the *Rodgers* court was concerned with a situation in which a third party's interest in real property was considerably greater than that of the delinquent taxpayer. *See Rodgers*, 461 U.S. at 711. That situation is not present here because the Mungers own the Property equally as joint tenants. Accordingly, the fourth factor favors neither the Government nor the Mungers.

Therefore, based on the record, the Court concludes that the facts of this case do not permit it to exercise its limited discretion accorded by section 7403. The Court orders that the Property shall be sold and concludes that the Government is entitled to judgment as a matter of law. *See Bierbrauer*, 936 F.2d at 377.

## III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, IT IS ORDERED that:

1. All claims against the Minnesota Department of Revenue are DISMISSED WITH PREJUDICE.

2. All claims against Bruce K. Hoyt are DISMISSED WITH PREJUDICE.

3. The Government's Motion for Summary Judgment [Docket No. 70] is GRANTED.

4. The Government's tax liens against Jeffrey A. Munger are valid and subsisting and attach to the undivided one-half interest in the Property, which is jointly owned by the Mungers and is legally described as Lot Three (3), Block One (1), Stagecoach Hill Addition, Hennepin County, Minnesota and is located at 6000 and 6002 West 106th Street, Bloomington, Minnesota.

5. Pursuant to 26 U.S.C. § 7403(c), the Government is entitled to enforce the tax liens described in Paragraph 4 against the Property by sale of the Property to help satisfy the tax liabilities of Jeffrey A. Munger. One-half of the proceeds from the sale of the Property shall be distributed to the Government to offset its federal tax liens against Jeffrey A. Munger, with the remaining one-half of the proceeds to be distributed to Victoria L. Munger.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 20, 2003

JOAN N. ERICKSEN
United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*